IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DONNA DAWN KONITZER aka S.A. Konitzer,

                                       OPINION AND ORDER

            Plaintiff,

                                       12-cv-874-bbc

    v.

EDWARD WALL,[1] GREG GRAMS,
TIMOTHY DOUMA, JANEL NICKEL,
DALIA SULIENE, TIMOTHY LUNDQUIST,
KEVIN KALLAS, DAVID BURNETT, JAMES GREER,
DANIEL WESTFIELD, J.B. VAN HOLLEN,
COREY FINKELMEYER, JODY SCHMELZER,
FRANCIS SULLIVAN, LILLIAN TENEBRUSCO and
LORI ALSUM,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    This is a proposed civil action in which plaintiff Donna Dawn Konitzer alleges that state defendants have failed to treat her[2] gender identity disorder despite a settlement agreement in a previous case. Plaintiff has made an initial partial payment of the filing fee as directed by the court. In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. Haines v. Kerner, 404 U.S. 519, 521 (1972). However, because plaintiff is a prisoner, the court is required to screen her complaint and

---

[1] Plaintiff named as a defendant "Secretary of Department of Corrections" in his official capacity. I have amended the caption to include Edward Wall, the current secretary. Fed. R. Civ. P. 25(d).

[2] Plaintiff refers to herself using female pronouns, so the court will do the same.

1

dismiss the case if the complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A.

After considering plaintiff's allegations, I conclude that she may proceed on Eighth Amendment medical care and negligence claims against defendants Suliene, Burnett and Wall in this case. I will construe plaintiff's retaliation claim as a failure to protect claim, sever that claim and place it in a new action. The remainder of her claims will be dismissed under Fed. R. Civ. P. 8 and she will be given an opportunity to file an amended complaint setting out her claims in more detail. The present case will be stayed while plaintiff does this.

From plaintiff's complaint, I understand her to allege the following facts.

ALLEGATIONS OF FACT

Plaintiff Donna Dawn Konitzer is incarcerated at the Columbia Correctional Institution. On September 1, 2010, she reached a settlement with the state of Wisconsin in a case filed in federal court in the Eastern District of Wisconsin (Case No. 03-cv-717-cnc) involving her claim against the state for treatment of her gender identity disorder. Under the conditions of the settlement, the state was required to contract with an expert in the disorder to independently evaluate and treat plaintiff; continue to provide female hormone therapy; consider implementing recommendations made by the gender identity expert; provide speech therapy to feminize plaintiff's voice; provide depilatories; and provide

plaintiff hair-loss treatment at defendants' expense for the first six months and at plaintiff's expense thereafter.

However, plaintiff discovered that defendants had decided before entering into the settlement that they would not take the steps to which they agreed in the settlement. They denied plaintiff an effective hair-loss medication on "frivolous" security grounds that it contained alcohol and instead provided a medication they knew would not work. Also, they discontinued one of the hormone therapy medications that helped with hair loss. Defendants provided the gender identity expert, Dr. Steven Brown, records "very loudly suggest[ing]" that this medication be discontinued, which Brown recommended and the state followed. Plaintiff's hair fell out "dramatically," causing her to feel suicidal.

Defendants concluded that speech therapy was a "leisure time activity" and refused to have it administered by the Heath Services Unit or allow plaintiff to record and play back her speech therapy exercises. Also, defendants forced plaintiff to use depilatory creams that were "not acceptable" because the cream did not remove hair from the root.

Plaintiff tried to get the Eastern District court to rescind the settlement agreement, but the court denied her motion. When plaintiff tried to petition the United States Supreme Court, defendants "made [her] petitions and related papers disappear." As a result, plaintiff was not able to file a petition until May 25, 2012, one day before her deadline.

Defendant Dr. Dalia Suliene told plaintiff that she would never receive the treatment she was seeking and that she was currently receiving as much treatment as she would ever get.

3

Dr. Brown's report ended with a section titled "Recommendations," containing "vague reference to certain types of GID treatment," such as "laser hair removal, the real life test/experience, and gender reassignment surgery." Defendant David Burnett, Department of Corrections medical director, acknowledged that these statements were not true recommendations and thus decided not to provide that treatment. Plaintiff would not have agreed to the settlement had she known that defendants were not going to provide her hair-loss treatment and would not consider the statements made by Brown.

Several weeks after plaintiff "made it clear" to defendants that she "would not rest until the fraudulent settlement was rescinded," plaintiff was attacked by an inmate about whom she had been warning staff for several months. Defendant Janel Nickel ignored plaintiff's concerns about this inmate.

On September 20, 2006, plaintiff met with Drs. Roger Kulstad and Elaine Pelley at the University of Wisconsin Hospital endocrinology clinic. The doctors recommended (1) plaintiff's use of a bra as medically necessary; (2) Rogaine to treat hair loss; and (3) depilatory cream to retard facial hair growth. Defendants held a teleconference with Pelley and "tried to intimidate" her into withdrawing the recommendations, stating that she was not a gender identity disorder specialist. Pelley withdrew the recommendations and plaintiff was never allowed to return to the endocrinology clinic. Defendants revised their "Offsite Service Request and Report" form to include an instruction to offsite doctors stating, "Don't prescribe comfort measures unrelated to your specialty." Plaintiff believes that no doctor is a gender identity "specialist" and thus no one will make proper recommendations about her

4

treatment. Defendants later changed the form cosmetically to obtain a newer revision date for the purposes of obscuring the fact that this policy was in place even before plaintiff's settlement.

OPINION

I understand that plaintiff is trying to bring claims regarding her medical care under the Eighth Amendment and state law medical negligence theories, state law theories regarding breach of the settlement agreement concerning that medical care, a retaliation claim and an access to the courts claim. I will address these claims in turn.

A. Medical Care Claims

A prison official may violate a prisoner's right to adequate medical care under the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). "Deliberate indifference" means that the

officials are aware that the prisoner needs medical treatment, but are disregarding the risk by failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, under this standard, plaintiff's claim has three elements:

(1) Did plaintiff need medical treatment?

(2) Did defendants know that plaintiff needed treatment?

(3) Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

After considering plaintiff's allegations, I conclude that she has stated deliberate indifference claims against defendants Suliene and Burnett for failing to adequately treat her gender identity disorder. Several courts, including the Court of Appeals for the Seventh Circuit, have considered gender identity disorder or transsexualism a serious medical need for the purposes of the Eighth Amendment. E.g., Fields v. Smith, 2011 WL 3436875 (7th Cir. 2011); Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000); White v. Farrier, 849 F.2d 322, 325 (8th Cir.1988); Meriwether v. Faulkner, 821 F.2d 408, 411-13 (7th Cir. 1987).

Plaintiff says that she would like to proceed on state law medical negligence claims, so I will allow her to proceed against defendants Suliene and Burnett on those claims as well.

### B. Claims Regarding Settlement Agreement

Plaintiff states that she wishes to bring breach of contract and fraudulent inducement claims regarding the settlement agreement, which are state law claims. At this point, she has

made allegations sufficient to show breach of the settlement contract: that defendants have (1) virtually ignored the gender identity specialist's ideas for potential treatment; (2) failed to follow through on the agreement to help her stop her hair loss; (3) failed to help her obtain and practice speech therapy; (4) failed to provide her adequate depilatory cream; and (5) intimidated outside doctors into withdrawing proposed treatments are sufficient to show breach of the settlement agreement. This court would have supplemental jurisdiction to consider these claims.

The elements of a claim of fraudulent inducement to enter a contract are "a statement of fact that is untrue, made with the intent to defraud, and for the purpose of inducing the other party to act on it, which the other party relies on to his or her detriment, where the reliance is reasonable." Kailin v. Armstrong, 2002 WI App 70, ¶ 31, 252 Wis. 2d 676, 643 N.W.2d 132. A promisor's intention not to perform the contract at the time he makes the promises is a circumstance in which liability may attach. Hartwig v. Bitter, 29 Wis. 2d 653, 658, 139 N.W.2d 644, 647 (1966). Plaintiff is alleging that defendants encouraged plaintiff to enter into the settlement agreement by promising that they would provide various types of treatment while knowing either that adequate treatment was not going to be available or that they would not carry out their promises to make it available. These allegations would usually suffice to state a fraudulent inducement claim.

However, there is a problem with both the breach of contract and fraudulent inducement claims: plaintiff does not explain which defendants are liable on these claims. She does not identify the persons who breached the contract or who induced her to signing

7

the contract. The closest she comes is to allege that all defendants conspired against her in inducing her to settle her case and then stonewalling her on treatment.

Conspiracy allegations are generally held to a higher standard than other allegations. Cooney v. Rossiter, 583 F.3d 967, 971 (7th Cir. 2009). In order to state this type of a claim, a plaintiff must allege that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." Reynolds v. Jamison, 488 F.3d 756, 764 (7th Cir. 2007). A "bare conclusion" or "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her" is insufficient to survive a motion to dismiss for failure to state a claim." Id. Because plaintiff fails to explain her claims with any specificity, I will dismiss the complaint under Fed. R. Civ. P. 8 as to these claims and provide plaintiff an opportunity to submit an amended complaint more fully setting out what each defendant did to violate her rights on these claims. (Similarly, to the extent that plaintiff wishes to bring medical care claims against defendants other than Suliene or Burnett, who are responsible for her care at the present time, she must set those forth in her amended complaint.)

### C. Retaliation/Failure to Protect

Plaintiff wants to bring a retaliation claim against defendant Nickel for ignoring her complaints about a threatening inmate, who eventually attacked her. To state a claim for retaliation, a plaintiff must identify (1) the constitutionally protected activity in which she

was engaged; (2) one or more retaliatory actions taken by each defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendants took the action they did against her. Bridges v. Gilbert, 557 F.3d 541, 556 (7th Cir. 2009).

Plaintiff's statements about seeking rescission of the settlement agreement are likely protected speech. Allowing one inmate to harm another would certainly deter the harmed inmate from making statements in the future, but I conclude that plaintiff fails to satisfy the third element, that her allegations make it plausible to infer that her statements caused the allegedly retaliatory act. She states that the attack occurred several weeks after her statements that she would seek rescission of the settlement agreement, which is long enough after the statement that there is no reason to infer that Nickel was retaliating when she failed to respond to plaintiff's complaints about the other inmate. Plaintiff states that she "believes it's possible that Nickel . . . ignored [her] serious concerns about this inmate because [she] wanted [her] to be attacked out of revenge," but this allegation is pure speculation that does not properly support a retaliation claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Atkins v. City of Chicago, 631 F.3d 823, 830-32 (7th Cir. 2011) (to avoid dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level.") (internal quotations omitted).

On the other hand, the law does not require a plaintiff to plead particular legal theories, Small v. Chao, 398 F.3d 894, 898 (7th Cir. 2005), and does not require the court

9

to proceed with the case on only the theories identified by a pro se plaintiff. Id. ("particularly since [plaintiff] filed his complaint pro se, he should not be held to the . . . incorrect theor[ies] he did name."). Plaintiff's allegations suggest that defendant Nickel failed to protect her from a fellow inmate even after plaintiff warned Nickel repeatedly about the threat to plaintiff. Prison officials have a duty to "protect prisoners from violence at the hand of other prisoners," which they violate if they exhibit deliberate indifference to a substantial risk of harm. Farmer, 511 U.S. at 832. Therefore I conclude that plaintiff has stated a claim against Nickel for her failure to protect her.

However, the claim cannot go forward in this suit because it is unrelated to the other claims that plaintiff discusses in her present complaint regarding her treatment for gender identity disorder. Fed. R. Civ. P. 18 and 20. Accordingly, I will direct the clerk of court to file copies of this order and plaintiff's complaint in a new case, case no. 13-cv-353-bbc, in which she may proceed on her failure to protect claim, provided that she submits another initial partial filing fee for that case.

## D. Access to the Courts

Plaintiff alleges that defendants took her legal papers when she was trying to petition to the United States Supreme Court regarding the case that she settled. To state a claim of denial of access to the courts, a plaintiff must "describe an underlying cause of action and how it has been lost or impeded." Christopher v. Harbury, 536 U.S. 403, 415-16 (2002). Plaintiff states that she was able to send out her petition on the last day allowed, so it is

unclear how she was prejudiced by defendants' actions. Moreover, as discussed above, plaintiff does not explain who actually violated her rights on this claim. Accordingly, this portion of the complaint will be dismissed under Rule 8 as well, but plaintiff will have an opportunity to set it out more fully in her amended complaint.

### E. Official Capacity Claims

Department of Corrections Secretary Edward Wall is a defendant in this case in his official capacity, meaning that he is included for the purposes of carrying out any injunctive relief that would be ordered. Accordingly, he will remain in the present case (and in case no. 13-cv-353-bbc) as a defendant concerning each of plaintiff's claims.

### ORDER

IT IS ORDERED that

1. Plaintiff Donna Dawn Konitzer is GRANTED leave to proceed on the following claims:

> a. Eighth Amendment medical care claims against defendants Dalia Suliene, David Burnett and Edward Wall.
>
> b. State law medical negligence claims against defendants Suliene, Burnett and Wall.

2. Plaintiff's failure to protect claim against defendants Janel Nickel and Edward Wall is SEVERED from this case. The clerk of court is directed to file copies of the

complaint and this order in case no. 13-cv-353-bbc. Plaintiff must make an initial partial payment in the amount of $43.37 in that case if she intends to proceed on her failure to protect claim.

3. The remainder of plaintiff's complaint is DISMISSED under Fed. R. Civ. P. 8. Plaintiff may have until June 13, 2013 to submit a proposed amended complaint detailing her claims more fully. The present case is STAYED pending the screening of the amended complaint. If plaintiff fails to submit an amended complaint by June 13, the case will proceed only on the two claims listed above.

4. Plaintiff is obligated to pay the balance of her unpaid filing fee for this case in monthly payments as described in 28 U.S.C. § 1915(b)(2). The clerk of court is directed to send a letter to the warden of plaintiff's institution informing the warden of the obligation under Lucien v. DeTella, 141 F.3d 773 (7th Cir. 1998), to deduct payments from plaintiff's trust fund account until the filing fee has been paid in full.

Entered this 24th day of May, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

12